## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

PHILIP ANTHONY RYAN,

    Plaintiff,

    v.

21ST CENTURY CENTENNIAL
INSURANCE COMPANY,

    Defendant.

Civil Action No. TDC-15-3052

## MEMORANDUM OPINION

On October 7, 2015, Plaintiff Philip Anthony Ryan filed the Complaint in this action alleging that Defendant 21st Century Centennial Insurance Company ("21st Century") breached his motor vehicle insurance policy by failing to compensate him for damages he sustained in a car accident with an underinsured motorist. Presently pending before the Court is 21st Century's Motion for Summary Judgment, filed on December 21, 2015, and Ryan's Motion for Leave to File First Amended Complaint ("Motion to Amend"), filed on February 4, 2016. The Motions are ready for disposition, and a hearing is unnecessary. *See* D. Md. Local R. 105.6. For the reasons that follow, both Motions are DENIED.

## BACKGROUND

On January 11, 2014, at approximately 6:00 p.m., Ryan, his minor sons, and another child, were traveling southbound on Interstate 95 in Prince George's County, Maryland in Ryan's 2005 Mercedes E320. Monika Deshpande was driving her 2005 Toyota Corolla in a lane to the right of Ryan's car when she suddenly swerved left and violently struck the front right side

of Ryan's car.  The impact of the collision sent Ryan's car spinning off the roadway and into an

embankment on the left side of the highway.

As a result of the collision, Ryan had severe pain in his neck, back, and shoulder and had

to have surgery on his cervical spine.  He has continuing pain and breathing problems.  Ryan's

medical expenses total approximately $200,000.

## I.     The GEICO Claim

At the time of the collision, Deshpande had an auto insurance policy through GEICO that

covered up to $30,000 for Ryan's bodily injury claim.  On May 19, 2015, GEICO offered to pay

Ryan the policy limit of $30,000.  The Maryland Insurance Code provides, in relevant part:

> If an injured person receives a written offer from a motor vehicle insurance
> liability insurer or that insurer's authorized agent to settle a claim for bodily
> injury or death, and the amount of the settlement offer, in combination with any
> other settlements arising out of the same occurrence, would exhaust the bodily
> injury or death limits of the applicable liability insurance policies, bonds, and
> securities, the injured person shall send by certified mail, to any insurer that
> provides uninsured motorist coverage for the bodily injury or death, a copy of the
> liability insurer's written settlement offer.

Md. Code Ann., Ins. § 19-511(a) (West 2014).

On May 26, 2015, believing Maryland insurance law to apply in this case, Ryan's

attorney sent a letter to Capri Bonczek, a claims representative for 21st Century, which stated,

"Pursuant to *Md. Code Ann. Ins., § 19-511 (2014)* ("Section 19-511"), this is to notify you that

GEICO Insurance tendered a policy limits offer, dated May 19, 2015, in the amount of

$30,000.00, with respect to the above-referenced incident."  Pl.'s Consent Request Letter, Pl.'s

Mem. Opp'n Def.'s Mot. Summ. J. or, in the Alternative, Pl.'s Mot. Stay Pending Disc. ("Pl.'s

Opp'n") Ex. 7 (emphasis in original).  The letter continued:

> Under Section 19-511, I am required to send this offer of settlement to you and to
> seek your written consent to acceptance of the offer and the execution of releases
> (with your agreement to waive subrogation), or alternatively, your written refusal

to consent to acceptance of the settlement offer.  Under Section 19-511, you are obligated to respond to this letter and notice within 60 days after your receipt hereof, stating either your consent or refusal as above-described.  In the event that you refuse to consent to acceptance of the settlement offer, within 30 days after a refusal to consent to acceptance of the settlement offer, 21st Century will be required to pay the amount of the settlement offer ($30,000.00).  To the extent necessary under the terms and conditions of their policy, this letter shall also serve to notify 21st Century of our intention to proceed against 21st Century under Mr. Ryan's own UM/UIM coverage.

*Id.*  On June 2, 2015, 21st Century responded with a letter that stated, "This letter serves to grant consent to settle the third party action."  Def.'s Consent Letter, Pl.'s Opp'n Ex. 8.

On June 12, 2015, Kenneth J. LaDuca, counsel for Ryan, sent a letter to GEICO, with 21st Century's June 2, 2015 letter attached, informing GEICO that 21st Century consented to the settlement pursuant to section 19-511.  On July 15, 2015, LaDuca sent a document to GEICO entitled "Release in Full of All Claims, which states that in consideration of a check for $30,000, Ryan "release[s] and forever discharge[s] Monika Deshpande . . . of and from any and every claim, demand, right or cause of action, of whatever kind or nature . . . resulting or to result from an accident that occurred on or about the 11th day of January 2014."  July 15, 2015 E-mail to GEICO, Pl.'s Opp'n Ex. 10; GEICO Release, Pl.'s Opp'n Ex. 11.  A provision discharging every claim, demand, right or cause of action against "all other persons, firms or corporations" was crossed out.  *Id.*  Handwritten at the bottom of the page and signed by Ryan was the following: "Notwithstanding the foregoing, it is understood that this release and indemnity agreement is made pursuant to Md. Code Ann., Ins. § 19-511, retaining all claims against any UM/UIM carrier, including but not limited to 21st Century Insurance."  *Id.*

GEICO then called LaDuca to state that the settlement check would not issue unless GEICO received another letter from 21st Century explicitly waiving any subrogation rights against GEICO and Deshpande.  Based on this phone call, LaDuca contacted Gary Pruett, a

General Adjuster for 21st Century, to request that 21st Century waive all subrogation rights against GEICO and Ms. Deshpande.  On July 20, 2015, Pruett, on behalf of 21st Century, sent a letter to LaDuca, which stated:

> Please allow this letter to serve to confirm that 21st Century Centennial Insurance Company waives all rights of subrogation against Geico and/or their insured, as it pertains to the injury claim of Philip Ryan stemming from the above captioned date of loss, and consents to Mr. Ryan moving forward with the settlement of his pending claim against Geico.

LaDuca Decl. ¶ 8, Pl.'s Opp'n Ex. 12; Def.'s Subrogation Letter, Pl.'s Opp'n Ex. 13.  Later that day, LaDuca forwarded 21st Century's letter to GEICO.  On July 28, 2015, GEICO issued a $30,000 check to Ryan.

## II.     The 21st Century Claim (Virginia Policy)

While Ryan was engaging in settlement discussions with GEICO and Deshpande, he also sought to recover under his auto insurance policy with 21st Century.  Ryan's 2005 Mercedes E320 was covered by a 21st Century insurance policy, issued to him at his Manassas, Virginia address, (the "Virginia Policy"), which stated, "We will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury' sustained by an 'insured'. . . and caused by an accident." Virginia Policy at 5, Pl.'s Opp'n Ex. 6.

On June 10, 2015, eight days after 21st Century had consented in writing to the GEICO settlement, Ryan's attorney sent a letter to 21st Century seeking $220,000 under the uninsured and underinsured motorist coverage of the Virginia Policy.  The $220,000 demand covered medical expenses, lost wages, and pain and suffering.  On June 26, 2015, approximately one month before 21st Century waived its subrogation rights, 21st Century responded with a letter stating that "we can neither accept nor reject your demand, but rather need additional

4

documentation to facilitate a complete evaluation of Mr. Ryan's claim." June 26, 2015 Def.

Letter at 1, Pl.'s Opp'n Ex. 17. Specifically, 21st Century sought information regarding Ryan's

pre-accident medical history and activities "to have a better understanding of the true effects of

this accident upon his spine." *Id.* 21st Century further stated, "Upon receipt and review of the

requested medical documents we will work swiftly to conduct a full evaluation of this claim with

the intention of responding to your demand. However, we reserve all rights afforded by Mr.

Ryan's policy contract to request further documentation/information as deemed appropriate and

necessary to complete a full and intelligent evaluation." *Id.* at 1–2.

On August 10, 2015, after the final settlement with GEICO, LaDuca sent a letter to 21st

Century attaching Ryan's medical records. On August 31, 2015, 21st Century responded by

expressing "significant concerns as it relates to the causal connection between the subject auto

accident and the eventual surgery Mr. Ryan underwent," noting that "defending that position can

come with certain costs and risks," and thus offering $36,425 to settle the claim. On September

8, 2015, 21st Century sent another letter in which it increased the settlement offer to $50,000.

On September 24, 2015, Ryan's attorney sent an e-mail to 21st Century attaching a draft

complaint. On September 28, 2015, 21st Century responded with a letter requesting additional

medical records and suggesting a physical examination of Ryan. On September 29, 2015,

Ryan's attorney, by e-mail, informed 21st Century that he would file a lawsuit "imminently" and

suggested arbitration of the causation issue. Sept. 29, 2015 E-mail from Pl. to Def., Pl.'s Opp'n

Ex. 24. On October 1, 2015, 21st Century responded with an e-mail stating:

> As noted in the past we have concerns over the causal connection between the
> subject accident and the eventual surgery performed on Mr. Ryan. We
> acknowledge your intention to initiate litigation in the immediate future. Once
> served accordingly, we will assign the matter to defense counsel and work
> expeditiously to conclude the discovery necessary to posture Mr. Ryan's claim for

a more complete and educated evaluation, with the hopes of more productive settlement discussions at that time.

Oct. 1, 2015 E-mail from Def. to Pl., Pl.'s Opp'n Ex. 25. On October 7, 2015, Ryan filed his Complaint. On November 3, 2015, 21st Century filed its Answer. In early November 2015, 21st Century reiterated its position that there was a weak causal connection between the collision and Ryan's injuries but nevertheless increased its settlement offer to $100,000.

On November 24, 2015, 21st Century filed an Amended Answer, claiming for the first time that Ryan may not recover on his underinsured motorist policy because he did not secure a judgment against the underinsured driver, as required by Virginia law. On December 21, 2015, 21st Century filed the pending Motion for Summary Judgment, seeking judgment as a matter of law based on this failure to secure a judgment.

III.    The 21st Century Claim (Maryland Policy)

In addition to the Virginia Policy, Ryan had a separate insurance policy through 21st Century that contains an attachment entitled "Amendment of Policy Provisions—Maryland" ("Maryland Policy"). Maryland Policy at 1, Def.'s Opp'n Pl.'s Mot. Amend ("Def.'s Opp'n") Ex. A. The Maryland Policy covers a different car, a 2008 Mercedes Benz R350 owned by Ryan and housed in Ocean City, Maryland. Part C of that policy, entitled "Uninsured Motorists Coverage," states, "we will pay compensatory damages that an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury . . . sustained by an insured . . . and caused by an auto accident with an uninsured motor vehicle." Maryland Policy at 10. However, a subsection of Part C entitled "Exclusions that Apply to Part C—Uninsured Motorists Coverage" states that "[w]e do not provide Uninsured Motorists Coverage for bodily injury sustained by an insured while occupying, or when struck by, any

motor vehicle owned by that insured if that vehicle is not insured for coverage under Part C." *Id.* at 12.

## DISCUSSION

Pending before the Court are Ryan's Motion to Amend and 21st Century's Motion for Summary Judgment. Because the Motion to Amend, if granted, could moot the Motion for Summary Judgment, the Court first addresses the Motion to Amend.

## I.   Ryan's Motion to Amend

In his Motion to Amend, Ryan seeks to amend his Complaint to add a second count for breach of contract based on 21st Century's failure to compensate Ryan pursuant to the Maryland Policy for damages arising from the January 11, 2014 accident. 21st Century asserts that Ryan's Motion to Amend should be denied because the proposed Amended Complaint is futile in that the Maryland Policy, on its face, does not provide Ryan with underinsured motorist coverage while driving the 2005 Mercedes E320 that was involved in the accident. The Court agrees and thus denies the Motion.

Federal Rule of Civil Procedure 15 states that a party may amend its pleading as a matter of course within 21 days after (1) serving it; (2) service of a responsive pleading; or (3) service of a motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend a pleading "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). "Leave to amend, however, should only be denied on the ground of futility when the proposed amendment

is clearly insufficient or frivolous on its face." *Id.* at 510. For instance, a motion for leave to amend the complaint may be denied on the ground of futility if the proposed amendment "could not withstand a motion to dismiss." *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

Here, Ryan's proposed Amended Complaint is futile because it would be subject to dismissal under Rule 12(b)(6). The Maryland Policy, referenced in the proposed Amended Complaint,[1] is divided into several parts: Part A is entitled "Liability Coverage," Part B-1 is entitled "Personal Injury Protection," Part B-2 is entitled Medical Payments Coverage," Part C is entitled "Uninsured Motorists Coverage, and Part D is entitled "Coverage for Damage to Your Auto." Maryland Policy at 3, 6, 9, 10, 14. Part C states that "we will pay compensatory damages that an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury . . . sustained by an insured . . . and caused by an auto accident with an uninsured motor vehicle." Maryland Policy at 10 (emphasis omitted). However, a subsection of Part C entitled "Exclusions that Apply to Part C—Uninsured Motorists Coverage" states, "We do not provide Uninsured Motorists Coverage for bodily injury sustained . . . [b]y an insured while occupying, or when struck by, any motor vehicle owned by that insured if that vehicle is not insured for coverage under Part C." Maryland Policy at 12. Here, Ryan seeks coverage for bodily injury he sustained while driving his 2005 Mercedes E320, which he owns and which is covered by the Virginia Policy. The Maryland Policy covers a different car, a 2008 Mercedes R350, and does not list the 2005 Mercedes E320 as a "covered auto." Renewal at 1, Def.'s Opp'n Ex. A. Therefore, under the plain language of the Maryland Policy, Ryan cannot recover for a collision that occurs while he was driving the 2005 Mercedes E320.

---

[1] Ryan has attached part of the Maryland Policy to his Motion to Amend, and 21st Century has attached the full policy to its Opposition. The Court considers the full policy attached to 21st Century's Opposition because it is integral to the complaint and of unquestioned authenticity. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Ryan's assertion that the Maryland Policy is ambiguous regarding whether the underinsured motorist coverage would apply to the Mercedes E320 is incorrect. He claims that because there is no formal definition of "Part C" in the policy, the term could refer to Part C of the Virginia Policy, or uninsured motorist coverage in general. Ryan supports his argument by noting the lack of a qualifier after "Part C," such as "of this policy," that would limit the reference to Part C of the Maryland Policy. The Court finds no such ambiguity. The allegedly ambiguous language is located in Part C itself and cannot fairly be read to apply to any Part C other than that contained in the Maryland Policy.

Indeed, courts interpreting Maryland insurance policies have rejected the precise claim asserted by Ryan. In *Powell v. State Farm Mutual Automobile Insurance Company*, 585 A.2d 286 (Md. Ct. Spec. App. 1991), the plaintiff similarly sought the benefit of not only the uninsured motorist coverage contained in the policy covering the car involved in the accident, but also the benefit of the uninsured motorist coverage in a separate policy that covered a different car he owned. *Id.* at 287. The court held that the latter policy did not cover injuries arising from the accident because it contained the language "there is no coverage for bodily injury to you while occupying . . . a motor vehicle owned by you, your spouse or any relative, and which is not insured under the liability coverage of this policy." *Id.* The Court even rejected the claim that this substantially similar language was ambiguous, concluding that to accept the plaintiff's argument "would be to participate in an absurd result." *Id.* at 288. *See also Sparwasser v. Fed. Kemper Ins. Co.*, 858 F. Supp. 501, 503–04 (D. Md. 1994) (rejecting, based on the interpretation of similar exclusionary language, a plaintiff's attempt to "recover under a second policy which does not cover the car involved in the accident"). Likewise, the Court finds no way to read the Maryland Policy as providing underinsured motorist coverage for the 2005

Mercedes E320 involved in the accident. Because the proposed amendment would be futile, Ryan's Motion to Amend is denied.

## II.      21st Century's Motion for Summary Judgment

In its Motion for Summary Judgment, 21st Century asserts that Ryan's Complaint fails as a matter of law because he has not obtained a judgment against the underinsured motorist, as required by Virginia law. In opposing the Motion, Ryan asserts that (1) there is a genuine issue of material fact regarding whether 21st Century has waived the requirement of a judgment against the underinsured motorist or is estopped from asserting that defense; (2) Maryland law, not Virginia law, applies because the process for establishing coverage under an underinsured motorist policy provision is procedural rather than substantive; and (3) the requirement of a judgment is unenforceable as a matter of Maryland public policy. The Court concludes that Ryan has established a genuine issue of material fact on the issue of estoppel and thus denies the Motion.

### A.      Legal Standard

Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). "A material fact is one that might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (internal quotation marks omitted). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49. The Court may rely only on facts supported in the record, not simply assertions in the pleadings, to

fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Grave–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

## B.   The Judgment Requirement

Federal courts exercising diversity jurisdiction apply the choice-of-law provisions of the forum state, in this case, Maryland. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, (1941). Maryland generally applies the doctrine of *lex loci contractus*, which provides that a contract dispute is governed by the law of the jurisdiction in which the contract was made. *See Allstate Ins. Co. v. Hart,* 611 A.2d 100, 101 (Md. 1992). 21st Century argues that Virginia law applies because the Virginia Policy was formed in Virginia.

Part C of the Virginia Policy states: "We will pay, in accordance with Va. Code Ann. Section 38.2-2206, damages which an 'insured' . . . is legally entitled to recover from the owner or operator of an . . . 'underinsured motor vehicle.'" Virginia Policy at 5. Part C further states: "We will pay damages under this coverage caused by an accident with an 'underinsured motor vehicle' only after the limits of liability under any applicable bodily injury liability or property damage liability bonds or policies have been exhausted by payment of judgments or settlements." *Id.* Section 38.2-2206 of the Code of Virginia states that "no policy . . . relating to the . . . use of a motor vehicle shall be issued or delivered in this Commonwealth to the owner of such vehicle . . . unless it contains an endorsement or provisions undertaking to pay the insured all sums that he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle." Va. Code Ann. § 38.2-2206 (West 2016). Courts interpreting section 38.2-2206 have found that "[j]udgment is the event which determines legal entitlement to recovery." *See Midwest Mut. Ins. Co. v. Aetna Cas. & Sur. Co.*, 223 S.E.2d 901, 904 (Va. 1976); *see also O'Brien v. Gov't Employees Ins. Co.*, 372 F.2d 335, 341 (3d Cir. 1967) (interpreting

11

Virginia law); *Boggs-Wilkerson v. Anderson*, No. 2:10CV518, 2011 WL 6934598, at *2 (E.D. Va. Nov. 17, 2011) ("In uninsured motorist cases, Virginia is among a small minority of states that requires the plaintiff first obtain judgment against the alleged tortfeasor before bringing direct action against the insurer."). In addition to securing a judgment, an insured must also "serve a copy of the process in any action instituted against the owner or operator of an uninsured motor vehicle upon the insurer issuing the policy." *Midwest Mut. Ins. Co.*, 223 S.E.2d at 904. These statutory requirements can be waived by the insurer. *See id.*; *United Serv. Auto. Ass'n v. Nationwide Mut. Ins. Co.*, 241 S.E.2d 784, 787 (Va. 1978).

Here, it is undisputed that Ryan has not secured a judgment against the underinsured motorist, and because he has settled all claims against her, he does not have the future ability to obtain such a judgment. Thus, if Virginia law applies, and if there is no basis to excuse this requirement, Ryan's claims against 21st Century would fail.

### C. Estoppel

Ryan, however, argues that even if the Virginia judgment requirement applies, 21st Century's conduct creates a genuine issue of material fact regarding whether the doctrine of estoppel precludes enforcement of this requirement to bar Ryan's suit. Estoppel is a doctrine in equity "which enjoins one whose action or inaction has induced reliance by another from benefiting from a change in his position at the expense of another." *Emp'rs Commercial Union Ins. Co. v. Great Am. Ins. Co.*, 200 S.E.2d 560, 562 (Va. 1973); *see Savonis v. Burke*, 216 A.2d 521, 522 (Md. 1966) ("Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded . . . from asserting rights which might have otherwise existed, either of property, or contract or of remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse . . .

.").[2] Courts have applied estoppel to require an insurance company to provide coverage when its actions cause detrimental reliance. *See Nationwide Mut. Ins. Co. v. Reg'l Elec. Contractors, Inc.*, 680 A.2d 547, 554 (Md. Ct. Spec. App. 1996) (requiring coverage where a policyholder conducted repairs in reliance on an insurance company agent's statement that the damage was covered). In the insurance context, if an insurer fails to require compliance with a policy requirement in a manner that induces good-faith reliance to the detriment of the insured, the insurer is estopped from demanding compliance with that condition. *See Columbia Fire Ins. Co. v. Boykin*, 185 F.2d 771, 773-76 (4th Cir. 1950). In *Columbia Fire*, the court held, under Virginia law, that after an insurance company failed to require the policyholder to meet the policy requirement to regularly report its inventory, it was estopped from denying coverage for inventory that was not reported at the time of a fire causing loss. *Id.* at 773.

Significantly, estoppel can arise not only from affirmative conduct, but from silence or a failure to warn that induced a policyholder to breach a policy condition. *See Columbia Fire*, 185 F.2d at 774 ("At no time prior to the fire did Defendant . . . notify, advise, instruct or complain to insured of any alleged failure to make reports . . . or make protest or give caution with reference to any non-compliance with the terms of the policy.") (internal quotation marks omitted)); *Emp'rs Commercial Union Ins. Co.*, 200 S.E.2d at 564. In *Employers Commercial Union*, the

---

[2] Although Ryan and 21st Century dispute whether 21st Century is estopped from demanding a judgment, they generally agree that Maryland law on estoppel is consistent with Virginia law on estoppel. *See* Pl.'s Opp'n at 18 n.3 (noting that "while it is Plaintiff's position that as the law of the forum, Maryland waiver and estoppel law applies because a procedural matter is at issue, Virginia waiver and estoppel law is consistent with the Maryland law as to the fact based inquiry required on these issues"); Def.'s Reply in Further Support of Def.'s Mot. Summ. J. ("Def.'s Reply") at 14–15. Because the outcome of 21st Century's Motion for Summary Judgment would be the same under either Maryland or Virginia law, the Court need not decide which state's law governs. *See In re Marine Energy Sys. Corp.*, 299 F. App'x 222, 228 (4th Cir. 2008); *Okmyansky v. Herbalife Int'l of Am., Inc.*, 415 F.3d 154, 158 (1st Cir. 2005) ("[W]hen the resolution of a choice-of-law determination would not alter the disposition of a legal question, a reviewing court need not decide which body of law controls.").

insurance company, Great American, learned of two speeding violations that would have justified cancellation of the policy, but took no action until after the policyholder got into an accident. 200 S.E.2d at 561–62. The court held that the insurance company was estopped from denying coverage because:

> At no time during the 11 day period did Great American advise [the policyholder] that it was contemplating either rescission *ab initio* or cancellation prospectively. During that period and on the day of the collision [the policyholder] believed that he was fully insured. Had he been given notice otherwise, he could have protected himself by acquiring insurance coverage from another company, either directly or through the assigned risk plan; and during the time he remained uninsured he could have protected himself simply by refraining from driving him automobile.

*Id.* at 564.

Here, there is substantial evidence to support Ryan's argument that 21st Century is estopped from requiring Ryan to obtain a judgment against the underinsured motorist in order to recover. Rather than seeking to enforce that requirement from the outset, 21st Century took active steps, upon which Ryan relied, that led to the effective foreclosure of Ryan's ability to meet that requirement. Central to the estoppel analysis is the significantly different procedures for enforcing underinsured motorist coverage under Maryland and Virginia law. Maryland, unlike Virginia, requires a policyholder to establish only that the underinsured motorist is liable in tort for the collision in order to recover under an underinsured motorist provision. *See* Md. Code Ann., Ins. § 19-509(c)(1) (providing that "each motor vehicle liability insurance policy . . . shall contain coverage for damages, subject to the policy limits, that . . . the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle"); *Erie Ins. Exch. v. Heffernan*, 925 A.2d 636, 645–46 (Md. 2007) (defining "entitled to recover" as whether the uninsured motorist is liable in tort).

14

Section 19-511 of the Maryland Insurance Code contemplates that policyholders may settle claims with an underinsured motorist and that individual's insurance company, yet still bring suit against their own insurance company. It sets forth specific procedures for policyholders to enter into such settlements while preserving their rights. Section 19-511 requires, among other things, that (1) the injured person send by certified mail a copy of the written settlement offer to the insurance company; (2) the insurance company respond within 60 days with consent or refusal to consent; and (3) the insurance company pay the amount of the settlement offer within 30 days if it refused to consent. Md. Code Ann., Ins. § 19-511(a)–(c). Section 19-511 further provides that "[t]he injured person may accept the liability insurer's settlement offer and execute releases in favor of the liability insurer and its insured *without prejudice to any claim the injured person may have against the uninsured motorist insurer*" once it receives "written consent to acceptance of the settlement offer and to the execution of releases." *Id.* 19-511(e) (emphasis added). Notably, the Code of Virginia does not contain comparable procedures for settlement with the insurer of an uninsured motorist, presumably because Virginia's judgment requirement would make it impossible to enter into such a settlement while maintaining the right to bring a cause of action against the insurer. *See* Va. Code Ann. §§ 38.2-100–6301.

In his interactions with 21st Century, Ryan made clear that he was pursuing the specific procedural steps, as contemplated by Maryland insurance law, to secure recovery from both GEICO, as the insurer of the underinsured motorist, and 21st Century, as his own insurer. When Ryan's attorney wrote to 21st Century on May 26, 2015 seeking its consent to settle with GEICO, he explicitly cited section 19-511 of the Maryland Insurance Code. Significantly, he also explicitly notified 21st Century that even with such a settlement, Ryan intended to "proceed

against 21st Century under Mr. Ryan's own UM/UIM coverage." Pl.'s Consent Request Letter Ex. 7.

When 21st Century then sent Ryan written consent to the settlement on June 2, it was affirmatively following the Maryland procedures that would allow Ryan to bring suit against 21st Century without having first secured a judgment. This action of following the section 19-511 procedure by granting consent to a settlement could therefore be deemed to be a failure to require compliance with a policy requirement—in this case, the judgment requirement—in a manner that induced good-faith reliance to the detriment of the insured. *See Columbia Fire Ins. Co.* 185 F.2d at 773-76.

Beyond the consent letter, 21st Century continued to induce reliance that it would not enforce a judgment requirement. In June and July 2015, before the settlement agreement was finalized, Ryan and 21st Century engaged in their own settlement negotiations during which 21st Century disputed the causal connection between the collision and Ryan's injuries, sought medical records, but never indicated that it would seek to enforce Virginia's requirement of a judgment. In order to facilitate the execution of the settlement, 21st Century also accommodated GEICO's request that it waive all subrogation rights against GEICO and Deshpande.

Although 21st Century argues that it never explicitly told Ryan that it would not require a judgment, that fact does not foreclose estoppel. 21st Century's failure to notify Ryan that it would enforce such a requirement until after Ryan had relied to his detriment may be sufficient. *See Columbia Fire*, 185 F.2d at 774 (finding estoppel based on the insurer's failure to "notify, advise, instruct, or complain" to the insured that it failed to meet a policy requirement to report on inventory); *Emp'rs Commercial Union Ins. Co.*, 200 S.E.2d at 564 (finding estoppel where the insurer never advised the policyholder that it was contemplating either rescission or

cancellation of the policy). The evidence that 21st Century indicated, through its actions and inactions, that it would not require a judgment could support a claim that it is estopped from enforcing the judgment requirement.

There is significant evidence that Ryan relied on these acts and omissions to his detriment. Having received 21st Century's consent, Ryan proceeded to finalize the settlement with the understanding that he could still pursue claims against 21st Century. When Ryan executed the release of claims against GEICO and Deshpande, he specifically crossed out the provision discharging claims against "all other persons, firms or corporations" and wrote into the Release "it is understood that this release and indemnity agreement is made pursuant to Md. Code Ann., Ins. § 19-511, retaining all claims against any UM/UIM carrier, including but not limited to 21st Century Insurance." GEICO Release. Thus, there is compelling evidence that had Ryan known that 21st Century would change positions and require a judgment, he never would have finalized the settlement.

Finally, in assessing the applicability of estoppel, courts assess whether the equities favor one side or the other. *See Columbia Fire Ins. Co.*, 185 F.2d at 773. Here, the evidence strongly suggests that the equities are in Ryan's favor. Based on the evidence presented, Deshpande appears to be liable in tort, after she "suddenly swerved left and violently struck the front side of [Ryan's] vehicle." Ryan Decl. ¶ 5, Pl.'s Opp'n Ex. 1. Thus, Ryan likely could have obtained a judgment against Deshpande in satisfaction of Virginia's judgment requirement, but he did not do so in reliance on 21st Century's cooperation in following the Maryland procedures under which he could reach a settlement and preserve his rights against 21st Century. If 21st Century is not estopped, the result may well be the perverse outcome that 21st Century enriched itself with premiums from Ryan for underinsured motorist coverage under two different policies, but

ends up paying nothing to Ryan.  Having offered evidence to support the conclusion that 21st

Century's actions and inactions induced Ryan's detrimental reliance, and that the equities are in

his favor, Ryan has presented a viable estoppel claim.

21st Century nevertheless claims that Ryan does not have a valid estoppel claim because

in the insurance context, estoppel cannot operate to expand coverage where it does not exist.

Virginia generally follows this rule. *Norman v. Ins. Co. of N. Am.*, 239 S.E.2d 902, 908 (Va.

1978).  Maryland has not definitively adopted it for all circumstances. *See Nationwide Mut. Ins.*

*Co.*, 680 A.2d at 554 ("Although neither of Maryland's appellate courts has squarely addressed

the issue of whether the doctrine of estoppel may be used to extend insurance coverage where

none otherwise exists, we believe that the doctrine must be applied on a case-by-case basis.").

Here, however, estoppel would not expand coverage. "[W]here the provision relates to the scope

of the risks to be covered (either by inclusion or exclusion) or to the dollar amount of coverage,

it is to be dealt with as a 'coverage' matter; otherwise, and particularly if it operates to furnish a

ground for the forfeiture of coverage or for the defeasance of liability . . . it will be treated as a

'forfeiture' clause." *Creveling v. GEICO*, 828 A.2d 229, 244 (Md. 2003) (quoting *Wright v.*

*Newman*, 598 F. Supp. 1178, 1199 (W.D. Mo. 1984)); *Norman*, 239 S.E.2d at 908.  The

provision of the Virginia Policy that requires a judgment is unrelated the scope of risks to be

covered or the dollar amount of coverage.  Ryan does not seek coverage for a type of harm not

referenced in the policy, nor does he seek to increase the underinsured policy limit.  21st

Century's strained argument that estoppel to bar enforcement of the judgment requirement would

expand insurance coverage is unpersuasive, particularly when compared to scenarios where

plaintiffs have sought to extend coverage through waiver and estoppel where none previously

existed. *See, e.g., Norman*, 239 S.E.2d at 907–08 (holding that the insurer cannot be required,

based on a claim of waiver, to provide coverage for intentional and malicious assault and battery where the policy never provided such coverage); *Creveling*, 828 A.2d at 245 (holding that clauses covering "medical expenses due to motor vehicle injuries that are reasonable, medically necessary, and related to the accident . . . are not merely technical conditions that must be satisfied for existing coverage to apply; they define the boundaries of coverage"). Here, the Virginia Policy states that 21st Century "will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury' sustained by an 'insured' . . . and caused by an accident." Virginia Policy at 5. Failure to obtain a judgment may constitute a "ground for the forfeiture of coverage," but it does not limit the scope of risks to be covered or the dollar amount of coverage. *See Creveling*, 828 A.2d at 244; *Norman*, 239 S.E.2d at 908. Thus, Ryan's estoppel claim would not impermissibly expand insurance coverage.

For these reasons, the Court finds that Ryan has established, at minimum, a genuine issue of material fact whether the doctrine of estoppel applies to bar 21st Century from relying on Virginia's requirement of a judgment against the underinsured motorist to bar Ryan's claim. *See Travelers Indem. Co. v. Nationwide Constr. Corp.*, 224 A.2d 285, 292 (Md. 1966) ("We have repeatedly stated that whether or not an estoppel exists is a question of fact to be determined in each case.").

## III.    Remaining Arguments

Because the Court finds a genuine issue of material fact on estoppel that necessitates denial of summary judgment, it need not address Ryan's remaining arguments relating to waiver, the applicability of Maryland law, and the unenforceability of the judgment requirement as contrary to Maryland public policy. The Court notes that, consistent with Ryan's request in the

alternative for discovery in advance of a ruling on the summary judgment motion, *see* Fed. R. Civ. P. 56(d), the parties may appropriately seek discovery relevant to these legal theories.

**CONCLUSION**

For the foregoing reasons, both Ryan's Motion to Amend and 21st Century's Motion for Summary Judgment are DENIED.  A separate Order shall issue.

Date:  June 30, 2016

THEODORE D. CHUANG
United States District Judge